time in place for hearing in the matter of Hecox versus Little concerning the issues of mootness and standing appellants. See, you may proceed. It's Mr. Zanzig going first. I am, Your Honor, Mr. Barnett for the intervener's appellants, Mary Marshall and Madison Kenyon. Oh, Mr. Barnett. All right. Thank you, Your Honor, and good afternoon. My name is Cody Barnett and I represent intervener appellants, Mary Marshall and Madison Kenyon in this appeal. With this court's permission, I would like to reserve five minutes of my time for rebuttal. May I please watch your clock? When Lindsay Hecox dropped out of BSU six days after failing to make the women's cross-country team in October 2020, it mooted this case. Since then, Hecox has always been multiple steps removed for running track at BSU, and running track at BSU is the exact injury that Hecox alleged the Fairness in Women's Sports Act prevented. So this disconnect between Hecox's alleged desire to run track and Hecox's actual ability to run track makes this case moot. For two reasons, the district court erred in concluding otherwise. First, the district court failed to heed this court's instructions to determine whether this case is moot and instead breathe new life into the case with facts unrelated to Hecox's complaint. Second, the district court erroneously saddled defendants with the burden of proving a negative that Hecox would not do something when the case law does not this counterintuitive proposition. Excuse me, counsel. Let me lay out what I'm thinking so that you can rebut it. Tell me what I'm missing here. It looks like she didn't make the team and she didn't make the grades she needed and she didn't have the money and she dropped out. But she filed a declaration with concrete plans to practice more and to get back into school and to accumulate the money to do it. I'm thinking at that point, it was pretty borderline in terms of mootness. But it turns out her declaration was pretty concrete. And she actually did it. Evidently, she meant it. She became an Idaho citizen and she got a job and she accumulated money and she practiced and she went back to school and she got into school, tried out for both teams, didn't make running, but she made it onto the soccer team. Right offhand, it doesn't look like one of those someday maybe cases. Someday maybe I'll visit that part of the country and it would be nice that the national park is left pristine for my enjoyment when and if I get there. It wasn't one of those someday maybe cases. It looks like it was real. She really meant to do what she said she meant to do and then she did it. What am I missing there? And two responses to that, your honor. I think article three demands that if there is any point on the timeline that the case becomes moot. That is a period, not a comma. And the point at which this case became moot is when Hecox dropped out of school in October 2020. At that point, there were at least six contingencies that separated Hecox from the injury complained of in Hecox's complaint. Of those six injuries, we had Hecox was no longer enrolled at BSU. Hecox did not have the stability to re-enroll at BSU at that time. Hecox then needed to try out for and make the team, something that Hecox had already failed to do at one point. And Hecox needed to be able to satisfy two NCAA regulations about credit hours. At which point even today, even if we take the facts today, Hecox cannot do. And as the district court noted in its order, predicting whether the NCAA will grant a waiver for those regulations is like predicting the weather. It's a practical impossibility, which I think distinguishes this case from others that Hecox cites about businesses who just needed to reopen shop. And this court said in those cases that there was nothing insurmountable about getting a business license. But there is something insurmountable at the very least about getting the NCAA to grant a waiver. Something that this court doesn't know, the district court didn't know, and Hecox does not know. And so I think when we consider all those contingencies, you'd need those waivers for everything. I'm just kind of curious about the looks like the school is violating NCAA requirements and violating Idaho law, but nevertheless, there it is. She plays on the soccer team. Well, your honor, this case has never been a case about club soccer. If you look at Hecox's complaint, the only alleged injury in that complaint is running on the Crouse country and track teams. There's nothing in the complaint about running and playing in club soccer. Right offhand, I don't see that as critical, but amendments are allowed liberally under Rule 15. Well, two things to that, your honor. First, in Arizonans for Official English, the Supreme Court said the court should be very careful about claims that are brought late in the day, especially in response to mootness. Let me ask you about Arizonans. I remember that case very well because I was one of the many dissenters. I can't remember if it was dissent from denial or dissent as part of the panel, but either way, the problem in Arizonans is that Iniguez had a summer job. She finished the summer job, and then she went on with her life as a student and an adult. She never stated any intention to return to state of Arizona employment. The problem was that her boss wouldn't let her speak English with the other Spanish speakers at work during her summer job, but it was never going to happen again because the summer ended and she went back to school. And that, it seems to me, is quite a distinction between this case and Arizonans. I think, your honor, it's actually very similar. We are still standing at a point two years later. In Arizona, Iniguez never said, I want to go back and get that job again. And in this case, Hecox said, I do want to, and she filed a declaration, puts her under penalty of perjury. I do want to, I intend to get back in a school and build up my running ability and get on the team. Your honor, I would say that Hecox's desire to run is more like a hope that we read about in Lujan. Hecox's stated intent alone cannot be enough to make this case unmoved. And I would direct this court to the second circuit's decision in the Fox case. In that case, you have some students who wanted to have a Tupperware party of all things, and there was a regulation that prevented them from having that. And while their case was pending, they either graduated or dropped out of school. One of the ones that dropped out said, well, I intend to come back to school. But the second circuit said that that stated intention alone wasn't enough. And here, if we look at this case at October, 2020, all we have is Hecox's stated intention to return and run track. There are so many obstacles separating Hecox from returning that it was simply speculative. And even if this court is inclined to look at the case today, at best, we're looking at fall of 2023 of whether Hecox will try out again. When Hecox had the opportunity to try out for the track team just last month, Hecox passed on that. Council, let me voice the question that's on my mind. As I understand it, we take the facts as are plausibly alleged by Hecox. Now, as she alleges the facts, why does she have to show more than a genuine and plausible intent to return? Your Honor, I think you have to take the facts as alleged in Hecox's complaint. And I think that as a matter of law, Hecox's intent to return is insufficient to make this case not moot. This court has always required something more than just a bare statement of intention. And in October of 2020, Hecox had nothing more than a bare statement of intention. There were six degrees of separation from Hecox and the only injury that Hecox pled in the complaint, which was running track at BSU. Your Honor, I would like to kind of talk a little bit more about the soccer point. I think this case is a little bit like the Hirschfeld case out of the fourth circuit. In that case, you had a plaintiff who wanted to sell firearms under the age of 21 and several federal regulations prevented her from doing so. And so she sued to invalidate those But the day before the mandate issued, she turned 21. And so the fourth circuit said that that mooted the case, but she argued in response that she now wanted to sell guns to those that were under the age of 21. And the fourth circuit said that that was an attempt to breathe new life into a case that was only about her ability to buy guns. I think that is analogous to the situation we have here. This case has only been about running track. That is how the parties have and my client intervener defendants have responded. That's how the district court weighed the balance of harms when it granted the preliminary injunction. It only considered track. Hecox's 11th hour attempt to shoehorn in soccer is a lot like the plaintiff in Hirschfeld who tried to shoehorn in selling firearms. The two simply aren't the same. If Hecox wants to bring a case about playing club soccer, then the proper course would be for this course to vacate the preliminary injunction, remand with instruction to dismiss, and allow Hecox to put that claim to the test, to file a complaint alleging that Hecox wants to run and is playing soccer, and allow defendants to respond accordingly. That is the courts that the U.S. Supreme Court is said to do when cases become moot. I would like to quote to this court just from U.S. versus Munsingware. The established practice of the court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with direction to dismiss. And then the Supreme Court followed that line with this one. When that procedure is followed, the rights of all parties are preserved. None is prejudiced by a decision which in the statutory scheme was only preliminary. And so the best way to preserve the rights of all parties here, your honors, is to vacate the preliminary injunction, reverse the district court instructions to dismiss this case as moot. That way if Hecox wants to bring a case about soccer, the defendants will have the ability to be able to litigate that case from the beginning and not to be litigating it here at this latter stage where we simply don't know all the facts and we have already made strategic decisions about this case that cannot be undone. Well can we put aside soccer for a minute? In her supplemental, in Hecox's supplemental affidavit, she states a very clear and concrete intent to try out for the cross-country team in fall of 2023. And as before, she's laid out a plan to do it and she's been in accord with that plan. So why isn't that concrete enough to keep this case live? Two things to that, your honor. I think the first thing is if this case was moot in October 2020, then anything that Hecox has said afterwards is irrelevant to that inquiry. Once a case becomes moot, article 3 demands nothing more than this case be dismissed. Courts don't have jurisdiction. Let's think about that. She dropped out of school back then after she didn't make the team. Did you move to dismiss this case as moot at that point? No, your honor, but what are we as a court supposed to do? I mean if you don't come tell us this case is moot, you have to dismiss it. If you had come then and said this case is moot, then I think we might have had to dismiss it. But now the facts are different. In fact, I think we raised mootness sua sponte. I don't think you ever moved to dismiss on mootness grounds. Isn't that correct? That's correct, your honor, but mootness is not an issue that can be waived or set aside. Article 3 demands that courts have jurisdiction at all times. What point? I recognize it's been a couple years. I'm just wondering at what point are we assessing mootness? For example, when the district court rolled, she was in school and she was going to try out for the track team. So was it moot when the district court rolled? No, your honor. I think mootness happened in October 2020 at the moment Hecox dropped out of school. I think if this court looks at that timeline and looks at that point, there were six things that separated Hecox from the complaint of injury in the complaint. Which none of them do anymore except for perhaps the waiver from the NCAA. Some of those things have been corrected, you're right, your honor. But at that point, if it was moot at that point, anything that's happened since then doesn't matter. Article 3, and as the U.S. Supreme Court said in Munsingwear, just requires that this court vacate the preliminary injunction and remain with instructions to dismiss. Everything that came after is an afterthought. Your honor, I see that my time is going low. If I could reserve the remainder of my time for rebuttal. Sure, thank you. Now, who's going next? Mr. Zanzig, are you going to argue now? Yes, your honor. Thank you. Okay, thank you. I see that Judge Kleinfeld maybe has stepped away. Nope, just needed a grant in case I couldn't reach. Okay. May it please the court, I want to make a couple of points here. First is, I want to clear that the defendants agree with the intervener's arguments on mootness and that this case should be dismissed. The other thing I want to do is address some of the questions that the panel's asked. And let's talk first about cross-country and track, the thing this case was always about. There've been some questions about, well, aren't there stated intentions here and can we rely on those? The problem is that intentions are all well and good, but we've got a history here of Hecox not following through on many stated intentions, particularly the ones that are in NCAA sports. So for example, we heard multiple times that Hecox had this plan to come back to school and try out in fall of 2022. Well, that never happened. And in fact, one of the reasons why it didn't is because Hecox didn't have enough credits to qualify and be eligible. And now we're seeing the same kind of stated intention of, oh, next year, maybe next year. Well, we have a person who has chronically been unable to fulfill the stated intentions academically. In the two years since Hecox dropped out of school in October, 2020, she's earned only three credits, three credits in two years. A normal load during that time is 60 credits. And the problem with not having accumulated enough credits is that not only was Hecox not this year, but Hecox almost certainly cannot be eligible even in 2023, because the NCAA says a student entering her fourth year, which Hecox will be at that point, must have at least 72 credits. That's 60% of the 120 needed for a degree. Well, we know right now Hecox has 45 credits because of dropping lots of classes. We know that Hecox has already dropped another class this semester. So best case for Hecox is getting 10 more credits this semester. I've got a couple of questions. Sure. You're getting past me and I want to make sure my mind is clear on this. My first question is, I thought she was in good standing now, as far as the school is concerned. I'm not asking about NCAA now, just the school requirements. Is she a student in good standing? Yes, indeed. Now, my next question is, the NCAA is not the institution that manages the team that she wants to be on. The school is. It looks like the school just kind of ignored the NCAA as far as the soccer team goes. Why can't we just ignore the NCAA? If the school lets her play, she can play. Well, if the NCAA wants to take action against the school's NCAA standing, it can take action and the school and the NCAA can fight about it. And I don't understand why we should take the stricter set of requirements of the NCAA as opposed to the more lenient practices of the school as determinative of whether she has any chance of realizing her ambition to be on the running team. A couple of points. First, the soccer team is not an NCAA team. It's a club sport. And so it's governed by a different body. It's called the NIRSA. It was the National Intramural and Recreational Sports Association at one time. They have very different rules, and their rules are not as strict as the NCAA. All you need to do to participate in a club sport is to be currently enrolled in four credits. The NCAA has a lot stricter rules. Yes, you're right. The school could just ignore the NCAA if it wanted and just violate those rules. But it doesn't do that because participation in the NCAA is very important to a Division I school like Boise State. That seems a little speculative itself. I mean, a lot of this movement and standing law is speculation about the future as well as discussion of the present and how the school will deal with sexual politics and cultural changes and fighting with the NCAA. I mean, if they want to show they're woke, they might think they'll be on the right side of history and the right side of public relations to tell the NCAA to just leave them alone. The fight here is between the school and Hecox and the state of Idaho. NCAA is not a party and it's not defending its rules here. Well, all I can say is that Boise State takes the NCAA rules very seriously. It has a compliance department. It's the one that's helped us put all this information together that we put in the NCAA rules. There is not. That's what I thought. I thought the NCAA is just, they might want to stick with NCAA rules or they might want to pick a fight to look good. Well, the only thing I'll just weigh in is to, I don't think the school would be likely to violate NCAA rules because then its teams wouldn't be able to participate in the NCAA competitions, which means they might as well be disbanding the team. I probably wouldn't have spoken on it since my only team was debate team. Well, I just know, I'm very familiar with NCAA rules because my I'm just saying it's a one point, but however, I think the point about the soccer team is very good. She can participate in soccer and she can participate in all of the other activities that she's doing to prepare herself to try out in 2023. My main point is she will not be eligible because the number of credits she has and her ability to get enough credits in the next semester. She just can't mathematically make it to 72, which she's going to need. So this is another problem that I've been having with this case and all the supplementing of all the, where is that in the record? Do you have a declaration from some of the school or NCAA that even though she has an intent to try out for the cross country and track teams in 2023, she will unequivocally be unable to do so because it is a practical impossibility for her to have the qualifying number of school credits to be able to try out for the team under the NCAA rules. Are you just telling us this now? What I can tell you is in the stipulated facts that were filed in the district court, the parties addressed this in some detail and cited to the NCAA rule. It's a bylaw 14.4.3.2 and it talks about the number of credits toward graduation that are required by the rules and all parties stipulated that those numbers had to be met or Kecox wouldn't be eligible. To answer your question fully though, can I say unequivocally there would be no way to participate? No, that wouldn't be true because there is this waiver process. The problem with that is it's completely discretionary to the NCAA, a third party not before the court to decide that issue and we have no way of predicting right now whether the Kecox made the team and so because of that, it is so speculative that Kecox is going to be able to do the things necessary to play or to participate on the cross country and track program that that's why we think this case is moved. Very speculative and I see I've gone way over my time but I've tried to answer the court's questions. If there are more, I'm happy to do that. And it's okay because this is a very difficult question and these issues are difficult and based on the facts of this case but so what I gather from your argument and correct me if I'm wrong is that you're saying she can't mathematically get the requisite number of credits but it's still in the hands of the NCAA whether they will waive that number and let her compete anyway. That's correct. Okay. All right. Well, why don't we hear from Mr. Barr on behalf of Ms. Kecox. Good afternoon, your honors, opposing counsel and may it please the court. My name is Andrew Barr on behalf of Lindsay Kecox. Your honors, this case is not moved and it should affirm the preliminary injunction ruling of Judge Nye and remain for further proceedings. Today, right now, Lindsay is enrolled at Boise State and a member of the club soccer team. Each of your honors have referenced that in some capacity but I do think it actually can make this quite simple and you know we've talked a lot about timing. Judge Bardlaw has some specific questions about when we assess mootness and I'll offer two things in that regard. One, a case that the the basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted. That's the words from the case intervener cited and it cites in and of itself two or three other Ninth Circuit cases talking about quote the present controversy. If we take the Ninth Circuit's invitation for that present controversy timing, Lindsay's enrollment in school, her participation on the club soccer team, and her stated intention to play again in the spring is enough for this court to see that this case is not moot and it certainly is enough for this court not to be able to find that it's absolutely clear that it's moot because remember your honors that is the standard. What about during that period when she had dropped out of school? Was there a present, it seems like relief could not be granted then at that time because she couldn't try out for so if we do look at this October 2020 timeframe that the interveners are focused on, I think there's both case precedent saying that that would be the inappropriate time to look at and I'll talk about barter affair in a second but even if we accept that as true, if we go to docket 135-2, that's the declaration that was submitted to this court prior to the remand order. Paragraphs 11 through 13 are what I'm referencing and what they say is two things and I think it we've all referenced but it also provides the concrete steps which is the difference between that particular circumstance and the Fox case that this court cited in its remand order. In the concrete steps that I'm referencing there's two of them. One, Lindsay dropped out of school as this court's put it. She withdrew from those classes on October 26th and October 28th and that's referenced in the declaration and the reason she did that is because October 30th was the deadline between having a withdrawal or an F. If Lindsay wasn't planning on coming back to school she wouldn't be careful about preserving her GPA. That October 30th deadline wouldn't have mattered to her at all except for the fact that she was planning on coming back and moreover your honors in this declaration 135-2 in paragraph 13 she talks about speaking with Boise State's financial aid department to talk about how to So those concrete steps that she's taking is to try to get financial wherewithal to afford what is very expensive for for most kids which is college. So having those discussions with the financial aid department and also preserving your GPA are two concrete steps that take this case much further across the line in the Fox case and just for context for this court's benefit the Fox case you have a group of kids who graduated and one student who had two credit left but was no longer in school. They made no efforts in the district court to talk about any intention to come back despite mootness being on the table. It was only in front of the appellate court that they did that and when they did it they had not taken any affirmative conduct to actually get back in school. They had to apply to the school. None of them had applied then they also had to be admitted and that's that third party contingency that everyone wants to talk about. That's the speculation in Fox. Would they be admitted back into school if they actually took those steps? That's not the case here. There are stipulated facts that there were no barriers to Lindsay re-enrolling and in fact we all know that's the case because she re-enrolled. Another thing that I think is important and speaks to the last line of questioning with Mr. Zanzig both the intervenors in the state want to talk a lot about this five or six steps of contingency but I direct the your honors to the district court docket 92. It's the first set of stipulated facts that were submitted by all parties. They are signed by all parties on October 15th of 2021. Paragraph 13 talks about NCAA eligibility. Notwithstanding what you were just told, this is what the party stipulated to after speaking with the NCAA reps at Boise State and I'm quoting, to try out a walk-on athlete needs to be a fully enrolled student, pass a physical and complete some paperwork period. That's it. So for Lindsay to try out in fall of 2023 she needs to be enrolled which she is right now and she stated she's coming back in the fall. She needs to pass a physical and to be very clear your honors this isn't the sex verification process that's subject to HB 500. This is a typical athletic physical and she needs to complete quote some paperwork. That's the only contingencies we're talking about here. The whole notion that she needs to be NCAA eligible the parties agreed is not the case. If you read further in paragraph 13 of the same district court docket number 92 it says this quote Boise State evaluates a walk-on athlete's NCAA eligibility after the student athlete makes the team end quote. So what that means is in order for Lindsay to try out all she has to do is be enrolled, take a physical and complete some paperwork. All these questions about NCAA eligibility which I'm happy to get into with your honors because I disagree quite vehemently some of the things that were said but it's all academic. Lindsay needs to be enrolled to try out and NCAA eligibility is a complete aside for her ability to try out. So that goes to your questions Judge Kleinfeld. I don't think we have to ask if Boise State would or would not comply with the NCAA requirements even if we want to talk about track and cross-country the only sport that's dealing with NCAA requirements pertinent to this case it just doesn't quite matter for the way that HB 500 would affect Lindsay because Lindsay couldn't even try out. And that's a direct the teams shall not be open and then it gets into the biological sex definition and what that effectively means and I'm paraphrasing is the women's cross-country team or the women's soccer team shall not be open to Lindsay. It's 62032 and then the definition is in the following section and under the Northeast Florida chapter under the BACU decisions from the Supreme Court it's the protection problem and in this particular case as Judge Nye found it's the imposition of the barrier it makes no sense to suggest that Lindsay could try out with no hope of making a team whatsoever and that's precisely what those cases are holding. So in this particular case you're getting way ahead of me okay so you're saying that when the statute says athletic team or sports designated for females women or girls shall not be open to students of the male sex you're saying that means she cannot try out under the statute but the school would let her try out and then make the NCAA determination later so this is all about the tryout at this point right? That's correct and just to make sure that the timing is correct HB 500 would prevent Lindsay from trying out the NCAA eligibility would only be talked about after she made the team so to the extent the NCAA eligibility would or would not be applicable to Lindsay it would only happen after the tryouts where HB 500 would prevent the tryout from happening in the first place and then to speak directly to the NCAA eligibility point if we take the interveners in the state's numbers that they provide and this is in docket 160 at page 22 they say that Lindsay needs to complete 27 credit hours before entering the tryouts in fall of 2023. If we accept their numbers you know I hate doing math as a lawyer but I do want to walk you through how that will stack up because it certainly isn't the quote we all took arithmetic in the first second and third grade we can do it. That's a long time ago Judge Pinefield but what it does say is this court needs to find that it's an insurmountable barrier to Lindsay having to deal with HB 500 again that's the City of Lakewood case that's the Barter Fair case. Let's break down those 27 credit hours based on what we know. In the declarations that Lindsay has submitted she has 10 credit hours for the for this fall the current semester that's ending in the next couple weeks. We have every reason to believe she'll finish those 10 credit hours which will mean that 27 credits she needs based on the intervener's number turns into 70. She also has six credit hours that were incompletes from spring of this year that she's been granted until May of 2023 to complete by Boise State and I got confirmation this morning which I'm happy to put before this court in a declaration if it would be helpful but I spoke this morning she's going to complete those over the Thanksgiving and winter break that is the plan she's working with an academic coach at Boise State to do so which is referenced in the declarations before this court. So if we take those 10 from the fall and the six that are the incompletes that means she has to complete 11 credits in the spring of 2023 or the summer. She's currently enrolled in 13 credits for spring of 2023 so even accepting the interveners in the numbers which you know I believe that to your honors if that's something you'd like to do but if you take their numbers Lindsay will have more than the 27 credit hours by the time spring is over. Do we know she'll finish all those classes? No we can't say anything's a guarantee but what we what we certainly cannot do is say it's an insurmountable barrier which is the standard this court is measuring this off of. Is it absolutely clear she won't have those credits? No. So on the front end it's sort of beside the point because the NCAA eligibility only triggers after tryouts but even if this court just wants to ensure itself you know and be safe thank you through NCAA eligibility Lindsay still is going to be at or above that 27 hour credit that again in docket 160 22 is what the interveners say applies. Counsel I have a question for you is the NCAA eligibility issue right for our decision now? I don't think this needs to touch that at all your honor for two reasons. One we still have club soccer I know we're not talking a lot about it but right now Lindsay is a member of the club soccer team and she is only a member because of the injunction in this case. So does she have a personal stake or can this court give effective relief? Absolutely and it's doing so right now with that injunction. On the soccer thing wasn't this whole case predicated around her joining the track team? I mean I don't know if we can just say oh she's on the soccer team so we're just going to substitute soccer for track. Your honor so this exact question was presented to Judge Nye and I'll direct this court to his preliminary injunction order at page 24 does talk about this but it's his mootness order which is before this court docket 149-2 on pages 22 and 23. He specifically addresses this very argument and he does two things he says one there and I'm quoting multiple allegations in the complaint address the injury that the act causes transgender women student athletes in general and we're not limited to track across country. He then cites paragraphs 2 through 5 of the complaint 38, 57, 59 through 65, 107, 121 to 124 and 127 and 137. So at least from Judge Nye's perspective the complaint was a much broader idea because in fact it's a facial complaint we're making bringing a facial challenge against HP 500 when this case started and to give you a sense of everyone understanding that the experts that were presented by the defendant they introduced this is docket 41-1 Dr. Brown he introduced studies that talk about boxing and basketball things of that nature so if this was truly a case that was so narrowly focused on track and cross-country you'd be very surprised to find a study referencing boxing for example. Okay so what's your strongest argument that the this case is not moot is it that she's currently playing on the women's soccer team and but for the injunction in place she would not be able to do so because of the Idaho law isn't that your stronger one rather than relying on the intent to try out again in 2023 for the track team? Absolutely your honor and I have the benefit of both of them ending up in the same place one is just much easier to get to if we took a look at club soccer right now today there's absolutely a live controversy using this court's decision in Bayer to use the quote present controversy timing there's no question that Lindsay is affected by this law and this court can give effective relief that should be open and shut for the entire article 3 question for mootness but to the extent we want to actually engage with what the interveners are talking about with their argument today and in the papers and including the states has all been premised on this notion of multiple contingencies five and six steps and my point here and what I want your honors to walk away with is even if we invite take the invitation to look at October 2020 those multiple contingencies aren't real and that's what document 92 paragraph 13 shows it's really just a question of is she enrolled is she going to take the physical and will she fill out paperwork that's the only contingencies we're really talking about even in October of 2020 she was already taking the concrete steps to get back in school already taking the concrete steps to prepare herself for the tryouts so even if we want to go that much longer winding route which personally I think is is unnecessary for this court to do but if we go that direction we still have a case that's not moved but to your point judge Bartlett's a much cleaner and much stronger either way they they there's there's not a situation which this court could say it's quote absolutely clear let me ask you one last question that bothers me can a case be moot for a time and then be revived which could possibly be the situation in this situation because if it was moot when she dropped out of school is it possible is there any law case law that says you can revive a case once it's new under I understand the question your honor and I unfortunately will only be able to answer to say that the interveners and state had every incentive to find that case and they didn't present it to this court I'm not familiar with any case that says that and in fact the Bayer case that was cited by the interveners that I've referenced today talks about a present controversy so I can't tell you right now that there's not a case out there to that point but I've never seen it the interveners haven't presented it and the state hasn't presented it if you don't want to accept the premise of that question anyway because your position is this case has never been moved that's exactly right your honor and I and not only is it my position that's perfectly consistent with the supreme court in this precedent saying that a stated intention to return to the challenge the conduct that is prohibited by the challenge law in concrete steps that's more than sufficient that's the city of Lakewood case the dream palace case the barter fair case and you know one thing judge ward law to speak to that question that might be helpful is the barter fair case from this court F3rd 1128 that case was filed in 1996 and it didn't actually get up to this court and resolved until 2004 so a lot of things had happened along the way and a mootness challenge was raised because the non-profit fair lost its corporate status they also hadn't done really anything to try to organize another large fair which was what the issue of the case was about and they were lacking funding in that span of eight years they lost their corporate status but then they regained it and what this court said was you know the non-profit had lost their corporate status they regained it that shows us they're taking concrete steps to possibly hold a fair in the future which is enough for this not to be a moot case so not only did this court not freeze time at that point where there's a they lost their corporate status which would likely be the closest that case was to moot if it ever was it actually said we credit them for going and getting their corporate status back because it shows that they're taking concrete steps to re-engage with this non-profit community fair that they're really interested in so to the extent you want to transplant that reasoning into this case you know looking at everything lindsay was doing in october before she took those withdrawals shows that she always had the concrete steps needed in those stated intentions and separately barter fair shows that this court wouldn't freeze time in october anyway it would look at the present state of affair when it gets around the case become before it which in this case would be today so i think barter fair is the closest case i can provide to you judge wardlaw that explains that timing and how this court in the past has resolved it counsel i need a little more help on the soccer team issue okay strikes me as a significant one and i'm wondering if we can reach it i was just taking another look at the complaint usually a complaint is in the form of i want something i'm entitled to it the defendant's not giving it to me i want the court to make them that's the basic form of the complaint seeking an injunction and in this case as far as i can tell all she says about what she wants is in paragraph 33 she wants to be on the women's cross-country team and try out for track and she says the statute's not letting her and if what she said was i want to try out for sports and the statute's not letting me that would be a different complaint and if the case gets back to district court i suppose she could amend to say that the statute is preventing me from getting into sports um but her complaint doesn't say that how do we handle soccer here what's the proper way to handle it do we just say well she could amend but we still have to find that the complaint as it stands did not become moved when she during that period when she was out of school and that her concrete steps were not enough yes yes just fine but i've seen my time has expired so i'll briefly address your question um judge ward law will allow you to answer the question yes of course please answer the question fully thank you your honors uh first i'd reference you to paragraph 38 uh your honor of the complaint as well as the prayer for relief and to give you not only that textual basis but i also want to direct you to the preliminary injunction order which is district court document 63 at page 34 and i'm i'm paraphrasing but um not far off from the quote this is what judge nye said in the context of what the interveners were trying to do the reason the interveners were granted the right to intervene to begin with is because they had a different position on what the statute did and how it would apply to lindsey than the state did that's how they were given intervention and this is why the proposed interveners say that the act must be read broadly to categorically exclude all sports so everyone in the district court litigated this as a challenge to all sports and that's why i referenced the state's experts bringing up studies about boxing or basketball the prayer for relief was a facial challenge trying to get all of hb 500 stricken and paragraph 38 talks about how lindsey wants to participate on equal footing of all the women athletes at school and it's not something where of course your honor she's her primary sport is running and that's what she's most interested in but in college she brought a challenge to this statute that categorically excludes her from all of the sports and that's precisely what she was trying to get overdone and it's precisely what and again the mootness order which is docket 149-2 pages 22 to 23 judge nye addresses this very issue the parties did brief it before the district court and judge and i found not only that the complaint addressed all sports including club soccer but also that his order did so that will certainly benefit the court could benefit from judge nye's thoughts on this process as well all right thank you counsel i think um mr barnett you reserved a few minutes for the end thank you your honor and i would just like to pick up with where my friend on the other side left off by looking at hecox's complaint if you read paragraph 38 in its full context hecox goes on to say that uh when talking about sports it's about running on the team and that sport i.e running has brought joy in the past and camaraderie and challenge and so it's very clear when reading that paragraph in its entirety that the one sentence the district court relied on here just does not hold up as to the bayer citation a present controversy does not mean a different controversy the controversies that my friend on the other side pointed out are two very different controversies that have been litigated in this case so far this case has never been about soccer and it's never been about the ability to try out even hecox noted that i would direct your honors to paragraph 31 of the complaint where hecox goes to great length to talk about missing the camaraderie and motivation that comes with being on a team running with people wearing the uniform having a coach it wasn't simply about trying out to hecox it was about actually being on the team and that is how this case has been litigated and so the ability to try out is a very different controversy that's again being read into the complaint in this latter stage when the original injury running on the team has become moot do you agree though that the the statute would preclude hecox from trying out for the track team your honor i don't agree for that we don't know how the school interpret the statute and whether or not it will prevent hecox from trying out the school has already as my eligibility so it's simply speculation one way or the other to say how the school interpret when the act will prevent it's not up to the school it's up to the judges and i mean how should those words shall not be open how should those words be interpreted well i think that highlights the problem here your honor is that we haven't litigated this case to determine whether it would bar hecox from trying out the case has only been about whether hecox will be on the team and district court's sort of assertion of the fact doesn't mean that it is so and so i think that just goes to show that this case has always been about running on the team and so if hecox wants to make this case about trying out the best course would be to do what the supreme court said at munting where it would be to vacate the current preliminary injunction remand with instructions to dismiss and if hecox wants to allege that trying out is the injury then hecox is free to do so there's just simply no prejudice to hecox and following the course the supreme court set out over 70 years ago in munting where i know i could quickly just talk about soccer your honors again soccer is nowhere in the four corners of the complaint and it simply cannot be read in to breathe new life into this case i think um counsel i'm wondering about something with soccer uh you already know just how little i know about athletics so i may be way off base here but when we got our kids into soccer as little kids it seemed to consist mostly of running back and forth a whole lot so that they'd be tired enough so we could get them to bed and i can't help but wonder whether when you're older than that soccer isn't good practice to try to make it onto the track team because you've been doing all that running back and forth for so long but admittedly your honor you probably know more about sports than i do but in fairness um even if it is good practice for the track team that's still a separate injury nowhere is it said in the complaint that the fairness of women's sports i'm i'm thinking of it in terms of concrete steps one of the ways i can get on the track team is to run back and forth in this huge soccer field and then i will have done a lot of running and it will improve my chances of making the running team i'll again you know direct your honors to the fact that soccer doesn't come into this case until spring of 2022 that in october of 2020 soccer is nowhere on hecox's mind and that in the stipulated facts in november of 2021 hecox says that the website mentions soccer and then only in spring of 2022 after we're already in the midst of this mootness bias does soccer enter into the case so even if it is a step it comes far after this case has been mooted and it's another demonstration of why this court simply should cut off the time period when it was moot on the timeline because article three that i have run out of time we'd simply request this court vacate the preliminary injunction remand to the district court with instructions as soon as this case is moot thank you all right thank you very much counsel hecox versus little is submitted and this session of the court is adjourned for today thank you very much counsel this point for this session stands adjourned
judges: KLEINFELD, WARDLAW, GOULD